You may begin whenever you're ready, and please watch the clock, especially if you want to save time for rebuttal. Thank you, Your Honor. I would like to reserve two minutes for rebuttal, Your Honor. May it please the Court, Thomas John Drigo for Petitioner. The immigration judge denied this case by cherry-picking certain facts to insulate an adverse credibility finding. On page 48, second paragraph, lines 4 through 6, the first fact the IJ cherry-picks is the Petitioner testified he kept in detention room for approximately a week. However, Petitioner did not provide any information in his written statement as to how long he was detained. However, on cross and on direct, he does state the date he was arrested and the date he was released. Under a new Ninth Circuit case law, Iman B. Barr, Fed Third, 1058 at 1067, 2020, the Court held, in generally, omissions are less probative of credibility than inconsistencies created by direct contradictions in evidence and testimony. And also, it is well-established in this Court that the mere omission, that the details insufficient to uphold an adverse credibility finding. Additionally, a new case that came out in 2019, called Li-Xi-Q v. Barr, 837 at 844, Ninth Circuit in 2019, held that it's not reasonable to find a Petitioner less credible merely because their statement did not note specific dates or names. Well, here, the Petitioner didn't include the actual release date or how long he was detained for. He wasn't embellishing. He just said when he was arrested. And at that point, he didn't write it. He didn't put it in. What if the judge would have had both these cases in evaluating the omission? Thus, the omitted date of his release should not be used as a negative factor to insulate an adverse credibility finding. But isn't, Counsel, I think your argument would have a lot more force before the IJ. But here, before us, our hands are a little bit handcuffed here. Our review is very limited, and you have to show that the record compels a contrary conclusion. So I think you're making some good points, but we do defer quite a bit to the IJ's finding of credibility. Agreed. But in totality of the circumstances, she doesn't look at the positive factors and credit those. She only cherry-picks certain negative factors. And under SESTRA, beholder, you're not entitled to just look at partial part of the record in establishing credibility. She doesn't address that he was consistent on how he was harmed. You mean how he was punched in the chest, how he was kicked, and how he was hit with a baton, and how many times, how consistent he was. She only takes certain factors and doesn't balance it against the totality of the circumstances in this case on the SESTRA. And that is compelling enough to warrant a more fact-finding situation in this situation for remand, because there is substantial enough evidence. He obviously at some point, if you look at actually page 272 of the record, which is the actual asylum application, which brings me to the next issue. Under the asylum application, actually page 273, I'm sorry, 273, part 1A, where it says, what happened? It says, have you or your family have ever experienced harm or mistreatment? And then it says, what happened? When was the harm and mistreatment? Who caused the harm or mistreatment? And why do you believe the harm or mistreatment? Well, she holds against him that he didn't mention his injuries, and being that he was black and blue. And so nowhere in the asylum application does it actually ask that question, have you sustained injuries and what are they? So she's using this as a factor to insulate that he's not credible, because it was an omitted fact. So it's not even asked in the asylum application to hold against the actual petitioner. Counsel, how do you address the, one of the things that bothers me is the IJ's finding about the, what did the IJ call it, the notarial certificate. Okay. Which you know is, you know, is notarized, what, like a year after he left China? That is, that is correct. How do you respond to the IJ, you know, and the BIA's polling of that finding? Yes, Your Honor. So under Yemeni Bear, is it likely he should have known or have known that this document was either fraudulent? Well, if you look at the record, he only had this document twice in his whole entire life, because it pertains to actually his parents, not him. So it's not his household registry. So he got this document when he went to go get his passport, and then when he went to go get the visa. Other than that, he didn't have it in his whole custody while he came from China to the United States. He requested it from his mom. His mom went to the notary and actually had this produced. There's no evidence in the record, even in his asylum application at page 270, at the first page of the asylum app, he only made one technical entry into the United States. So there's no way physically he could have been back in China to have this and bring it here. So if he didn't have full control of this document, and this is somebody who's prescribing, saying this is real, but it's presented by supposedly the petitioner, but the petitioner never went back to China, how would that affect his credibility on what happened to him and his arrest? And what is the document offering to purport? His ID. He presented two other documents for his ID, which was his passport and his national ID. So he did establish who he was under the Real ID Act of 2005. So how would he have known a document that he's getting a copy of from his parents that is fake or fraudulent as the judge addressed in her decision? She believes it's suspect as well as possibly fraudulent. And under Yemini-Bear, you had to have known or should have known. But all the information on the actual document is correct and true and complete. It's just the scriber's error saying that he presented it while he was here in the United States. So I think if you're balancing the totality of the circumstances, that shouldn't affect his credibility on what happened to him in China or that he was had past persecution, which then leads me into the next reasoning of the judge denying the case because he didn't seek medical attention. The medical attention he didn't seek because while in prison, he stated that he asked for medical attention and the police said, no, we're not. No. So at that point, he said, and then they said, you cannot get medical attention. So even after he was released, he was scared because of what he suffered, which would corroborate how bad or how severe he was mistreated. Because based on that fear, that would establish more of a positive factor towards his credibility. Counsel, can you address going back to interrogation? Didn't the I.J. also make an adverse credibility finding based on demeanor that he had? There was a 10 minute pause when he was pressed on why he didn't mention the first interrogation. And we can we really can't reassess the I.J.'s finding adverse credibility finding based on demeanor. And we didn't see him. Right. Actually, it was a 10 second pause. And it's established actually in the decision of the BIA. They actually show the record as a 10 second pause. And so he's trying to reflect certain things that he has no control of on figuring out why he didn't include certain things in his asylum statement. And that's where she's questioning you. You had all this time to do all this. Why didn't you put it down? And he said, well, I covered what was, you know, pretty much what was asked of me when I wrote it out initially. And that's based off of the questions from the asylum application. And that's where she kind of doesn't look at the consistency between his written statement and his testimony. And then says, well, you should have included this. These are omissions and these are not contradictions or embellishment. If I can honestly agree, if he included, well, I was shot or I was, you know, I was cut and included that as part of the harm during testimony. Well, that's totally contradictive to what he testified initially. But this is based on the I.J.'s assessment of his demeanor. And I just don't see how we can reassess that. Maybe the 10 second gap was him thinking, but I.J. thought that was a sign that he wasn't telling the truth or coming up with an excuse. And again, you may have a point, but again, from our review, I don't know we can really reassess the demeanor. Right. He basically is asking about the first interrogation. Why didn't you include the first interrogation? Well, if you look at the Webster's Dictionary of First Interrogation, you're looking at a sequential points of questioning. Well, in the first interrogation, it was so brief. He said they warned me not to participate in the actual church activities anymore. And then they put me back in. Then he goes and says, you know what? I may have forgot. But then he goes into saying, well, no, the second interrogation is actually more because I suffered questioning for 20 minutes and about several minutes of being beaten and hit with a baton and kicked and punched. So he said he said and he explains and it's plausible why I didn't include that first interrogation. And it's not that he was embellishing. It just wasn't technically may have not been an interrogation. He was warned not to participate in the churches anymore. So really, he's trying to explain why he didn't put the first interrogation. That was so brief. It should not be used as a demeanor situation when it was only 10 seconds to reflect why he didn't include it in his asylum. Mr. I think you've exceeded your time. We'll give you a minute for rebuttal. Thank you. Good morning, Your Honors. Nancy Cantor on behalf of the attorney general. The record here just simply does not compel reversal of the agency's adverse credibility determination. In reviewing the totality of the circumstances, it's clearly evident the reasons for which the agency found petitioner to be not credible. One, I'd like to talk first about the omissions and inconsistencies. The omissions and inconsistencies here between the petitioner's asylum application and his testimony at his removal hearing are not merely inconsequential or insignificant. They pertain to, one, the number of interrogations he suffered, one, which is what he said in his asylum application. But during his hearing, he said he suffered two interrogations, and also the injuries he suffered. There was no mention of the injuries he suffered in his asylum application. But at his removal hearing, he indicated that he suffered bruising and other bruising on his torso. So what that amounts to, I think, is at the hearing, some people would say he embellished his statement. But I think the point is almost all of the faults that the IJ found with his testimony were omissions. And I think our case law says if the credibility finding is based mostly on omissions, that's not the best way to do it. Isn't that right? Isn't that our case law? Your case law is correct, Your Honor, that omissions alone are not sufficient. However, it's not just omissions here. It is also the immigration judge's demeanor finding. The immigration judge specifically questioned him regarding the omissions, and during the removal hearing asked specific questions as to why he indicated only one interrogation versus two. As we discussed or as Your Honors discussed earlier, the immigration judge is in the unique position of being able to evaluate and assess the petitioner's demeanor. And here, if we look at the totality of the circumstances, again, it's not just the omissions and the inconsistencies, but it's the omissions and inconsistencies, it is the demeanor, and the third point, it's the documentary evidence. The documentary evidence is concerning because, one, as mentioned earlier, the notarial certificate was incorrect on its face. It said that petitioner provided this document at a time in which he simply could not have provided it. But also, the supporting documents that he submitted, the letter from his pastor here in the United States, were vague. So, again, it's not any one specific factor that the agency relied upon in finding petitioner not credible. It was the totality of the circumstances, the omissions and inconsistencies, the demeanor, and the documentary evidence. Should we give that much weight to omissions or tensions between the written statement and the testimony? Because for written statements, I don't know the circumstances here. The written statement may have been submitted just by the petitioner himself without aid of counsel, so he doesn't maybe know he should provide all the pertinent details. And even if he did have counsel, sometimes counsels, you know, they don't do a good job of explaining that. So when you have omission and it's really that the contradiction is the, you know, written statement along with the testimony, you know, I guess it is understandable why some details may have been omitted. Well, Your Honor, I'd like to discuss briefly, I think on that point, the significance of the omissions or details that were omitted. Petitioner's counsel says that Lizzie, Chi, and Iman compel reversal of the agency's determination in this case. But in those cases, the omissions were insignificant in that the omission in Lizzie, Chi, was regarding the specific date an abortion occurred or the name of the family planning director or hospital staff. I think it's certainly plausible that an individual fleeing a country from persecution doesn't know the date they suffered it or the name of the persecutors. But here, it's one versus two interrogations, medical injury or physical harm versus none. Furthermore, in Iman, the adverse consequences that were omitted were adverse consequences to third parties, not to the individual himself. So while, again, I think that's why the court's precedent is that we look at the, or, you know, under the Real ID Act, we look at the totality of the circumstances. The omission itself can be insignificant or explainable, but the significance of the omissions here, one versus two interrogations, physical harm or not, coupled with the demeanor finding and the documentary evidence simply do not compel reversal of the agency's adverse credibility determination. Unless the court has any additional questions, government's happy to yield the remaining time. Thank you. Thank you. Mr. Tariq, I have a question for you, and that has to do with this concept of the omissions. Didn't the judge give him the opportunity to explain those omissions? Isn't really what happened here that he was inconsistent when he tried to give those explanations? Are you referring to what part of the record as far as is there several omissions? Well, if you're talking about the interrogation. Right. So he explains on page 49, actually page 167, lines 3 and 6. Okay. As well as 17 and 18, 23 and 24. He says, I.J. asks, why didn't you include your interrogation for two times? The petitioner states he might have forgotten the initial interrogation when he was writing it. He mentioned only the second interrogation in his statement because the experience was more serious. So in that sense, and if you look at the record on those pages, he was briefly taken by the police, told not to practice. And you went into that, Mr. Tariq, but then we're talking about the injuries and the extent of the injuries and the explanation about the difference in why he didn't explain that and then why he didn't seek medical attention. He was inconsistent in his explanations of why he didn't seek medical attention. He wasn't inconsistent why he didn't seek medical attention. He basically said, I'm afraid they told me not to see a doctor. Did he not also say they weren't that bad at one point? He said it was a little bit of injury, but he wanted to see because it hurt severely. And so he's not a doctor. He wanted to go see to make sure everything was okay. But the police, he asked after his beating in detention, can I get medical attention? They said no. And then he was told, and this is on, if you look at page, it's actually in the judge's page 50, second and third paragraph from page 51, that he was less candid of why he did not seek medical treatment. On page 106 of the record, lines 1 through 23, did you ever seek medical attention? No. Why not? Because the police did not allow me to see the doctor. You asked the police to see when? Yeah, I asked them right after, after I was beaten. And they threatened me, and when did you ask them to see after I was beaten? Then they threatened me, didn't allow me to see a doctor. I.J. then asked, didn't you seek medical attention after you were released? So these are two different separate issues when he was seeking medical attention. One inside the facility, and then when she was addressing the other one, which is a totally different issue, why didn't you seek medical attention after you were released? He said, I was afraid. And this is on page 107, lines 10 through 25. He says, I was afraid because the police, why didn't you seek medical attention? He said, I was not allowed to see any doctor. And that's also on page 108, lines 3 through 15. So the police told you, sir, at some point during your detention, you were never to see a doctor? He says, no. Well, what did they tell you? They stated I was supposed to say that I didn't suffer a beating. And he says, it states all right, so they didn't tell you anyone about mentioning injuries. They did not tell you that you could not see a doctor. Petitioner replies, but they said I was not supposed to see any doctor. I was not allowed. So his actual testimony is consistent, that he was told that he's not allowed. So physically he could have been able to go to a doctor, but he's afraid of the consequences. This fear actually corroborates him being harmed. He does say that, but doesn't he also say that he felt his injuries weren't so serious as to require medical treatment in a different spot? Right. He said they were not as bad, but he said he felt pain, severe pain. That's why he wanted to seek medical attention. Isn't that in and of itself inconsistent? Well, unless he knows, if you suffer bruises and it's severely pain and there's a small amount of bruises, but you're not a doctor to assess whether or not it has complications, this is where he wanted to seek medical attention. And then the police said no, and at that point he was denied. So it's one of those situations like you don't know how serious it is until you go to the hospital or see a doctor, even if it's a small bruise or certain injuries. So that's why he wanted to seek medical attention, especially when he said it was so painful right after the beating. Okay, go ahead. When you say that's why he wanted to seek medical attention, that's not in the record, is it? You're just making that up. No, it's actually, he says afterwards it hurt so much he asked to see a doctor. I know, but he didn't say why because, you know, a small bruise might be serious. No, he didn't say about the hospital. I mean, you're just embellishing the record, aren't you? No, and maybe, let me clarify. He said after the beating he had severe pain and that's why he wanted to. The question from the other judge was saying to me, well, these were small bruises, and then I'm saying, well, how would anybody know unless you're a doctor to know what kind of complications you have from bruises? That's my point only. Not to embellish the record. Okay, great. Thank you both for the helpful oral argument. The case has been submitted.
judges: TASHIMA, LEE, Cardone